By the Court. Duer, J.
The first inquiry in the proper order of discussion is, whether the mortgage to Mr. Townsend must be adjudged to be fraudulent and void as against the appellants, Stewart & Go. ? and in considering this, nearly all the important questions arising in the cause will be determined.
The mortgage to Mr. Townsend is sought to be impeached upon two grounds.
I. That it was not accompanied by an immediate change of the possession of the chattels mortgaged, and that no cause for not changing the possession has been shown, that the law will approve.
2. That the larger portion of the debt for the securing which it was given, was not due from Judson individúally, but from the firm of Cranston & Judson, and that this fact rendered the mortgage fraudulent and void on its face as against the separate creditors of Judson, and therefore void as against the appellants, Stewart & Co.
As to the first objection, that there was no immediate change of the possession, we strongly incline to the belief, that the act of 1833, *95 which declares that a mortgage of chattels, not followed by an immediate change of the possession shall be absolutely void as against creditors and purchasers, unless the mortgage, or a copy thereof, shall be duly filed as directed by the act, was designed to repeal, and ought to have been construed as repealing the provision in the Revised Statutes, which, when the possession is not changed, raises a presumption of fraud that can only be rebutted by evidence that the mortgage was made “in good faith, and without any intent to defraud creditors or purchasers—the reasonable construction of the act seems to be, that where the possession is changed, the filing of the mortgage, and where the mortgage is filed, a change of the possession, is unnecessary—the change in the one case, and the filing in the other being equivalent to an actual notice, giving to subsequent creditors and purchasers all the security against fraud that can justly be required, and thus placing a mortgage of chattels when filed, substantially on the same footing as a mortgage of lands, when recorded. It must, however, be admitted, that the Supreme Court decided at an early day, that the act of 1833 was not to be construed as repealing the provisions of the Revised Statutes, but that (in the words of Mr. Justice Bronson,) its only effect was “ to add another to the grounds upon which a mortgage of chattels maybe declared void.” (Wood v. Lowry, 17 Wend. p. 492). Mor can it be denied that there are several cases in the court of errors, in which this construction seems to have been adopted and followed. It is, therefore, probable that the question cannot now be regarded as open. Assuming, then, that the statutory provisions are still in force, is it their just interpretation, that a mortgage of chattels not accompanied by a change of the possession, must be adjudged to be fraudulent and void, unless the reasons given for not changing the possession are satisfactory to the court? In other words, is the question whether the presumption of fraud which the statute raises, is repelled by the evidence—a question of law or of fact? is it to be determined by the court alone, or when evidence is produced, by the jury?
We confess our surprise, that at this day such a question should be raised. Many years have elapsed since it was definitively settled, and the whole argument of the counsel for the appellants was built upon a construction which the court of last resort has overruled and exploded.
*96 It is true that the former Supreme Court, in Doane v. Eddy, (16 Wend. 523,) Randall v. Cook, (17 Wend. 53,) White v. Cole, (4 Wend. 119,) and many other cases, have held the doctrine for which the counsel contended, namely, that in all cases of a sale or mortgage .of chattels, some good and sufficient reason, such as the law will approve, must be shown for leaving the property in the possession of the vendor or mortgagor; and that when the property is of such a nature that there may be an immediate change of possession, that change must be made, or the law will pronounce the transaction fraudulent as against creditors and purchasers. But it is equally certain that this doctrine, as repugnant to the plain words of the statute and the manifest intention of the legislature, has been distinctly repudiated and in terms overruled by the court of errors in Smith v. Acker, (23 Wend. 653,) Cole v. White, (26 Wend. 519,) and Hanford v. Artcher, (4 Hill. 272,) and that the paramount and controlling authority of these decisions has been fully acknowledged by the present Court of Appeals in Butler v. Miller, (1 Com. 499,) and in Griswold v. Sheldon, (4 Com. 581.)
The law, therefore, is now settled, that when a mortgage of chattels is presumed to be fraudulent, on the ground that it was not followed by an immediate change of possession, an inquiry into the motives, reasons, or causes for not changing the possession is irrelevant, so far as it is designed to raise any distinct question for the determination either of the court or jury. The law is settled that the true and sole inquiry is, whether the presumption of fraud is repelled by evidence, that the mortgage (in the words of the statute) was made “in good faith, and without any intent to defraud creditors or purchasers ?” that the question of fraudulent intent in this, as in all other cases arising under tne statute, where it depends upon extrinsic proof, is purely a question of fact, which it belongs to the jury alone to determine, and that their verdict in favor of the validity of the transaction, if founded on pertinent evidence, is conclusive. Consequently, when a cause involving the question, either from its nature or by the consent of the parties, is tried by a judge at Special Term, his finding of the fact is just as conclusive as the verdict of a jury. The true construction of the statute, therefore, is, that its only effect, when the execution of a mortgage is not followed by *97 an immediate delivery of the possession, is to throw the burden of proving that the transaction was fair and honest upon the mortgagee, and when the proof thus given by him is relevant and satisfactory, and the mortgage has been duly filed, it matters not how long, or for what reasons, the mortgagor was permitted to retain the possession.
What, then, is the proof which, in such cases, the mortgagee is required to give to rebut the presumption of fraud ? It is this, and only this: He is bound to show that the debt mentioned on the mortgage was actually due, and that to secure its payment was the sole object of the parties.
We think with the Judge below that this proof was given in relation to each of the mortgages now sought to be impeached, and are therefore of opinion, that his finding, that each of them was made in -good faith and without any intent to defraud creditors or purchasers, is conclusive.
The second objection to the validity of Mr. Townsend’s mortgage, that it was given to secure a partnership debt, is also founded on an erroneous view of the existing law, and, emphatically, of the position and rights of Stewart and Go. as the creditors of Judson.
As each partner in a firm is personally liable for the payment of its debts, there is certainly no law that forbids him from paying, or securing the payment of the whole, or of any portion of them, from his own separate property or funds; and in many cases to make such payment, or give such security, may not only be his right, but as between him and his partners a positive duty; the debt or fund or money, may, in respect to the creditor, be a partnership debt, and yet may be one which, in respect to his partners, he is bound to discharge; and, assuredly, it has never been supposed that the creditor to whom the payment is made or security given, is bound to inquire into the accounts of the firm, or that his right to accept such payment, or security, is at all affected by the insolvency of the partner from whom he receives it.
The cases upon which the learned counsel for the appellant rested his argument, it is not difficult to show, are quite inapplicable. It is true, that when an insolvent firm make an assignment of the partnership property for the benefit, of their creditors, they have no right to- give a preference, in the order of payment, to the *98 separate creditors of an individual partner; and it may also be admitted that when an insolvent partner makes an assignment of his separate property for the benefit of his creditors, he has no right to give a preference to a creditor of the partnership; in each case the property assigned' is considered as a trust fund, applicable, in the first instance, to the payment, in one case, of the partnership, and in the other, of the separate creditors; but in neither case, according to the decision of Chancellor Walworth in Kirby v. Schoonmacker (3 Barb. Ch. R. 46), and of this court in Nicholson v. Leavitt (4 Sand. S. C. R. 305), does the illegal preference render the assignment wholly void. It is only the clause giving the preference that is rendered void, and it can only be declared so at the instance, and for the benefit, of the creditors whose claims have been unjustly postponed, and who, by such a declaration, become entitled to share in the fund which the debtor had attempted to divert from its proper application. In Kirby v. Schoonmacker, where the bill was filed by a judgment creditor on his own behalf, to set aside an assignment made by a partnership, upon the ground that it gave a preference to debts due from the partners individually, the Chancellor, holding that the preference was not evidence of a fraudulent intent that could avoid the asr signment, but could be regarded only ás a violation of the equitable rights of the partnership creditors as a class, also held, that it was only upon a bill in behalf of all those creditors that any relief could be granted. The bill, not being of this character, was therefore dismissed.
It is obvious that the doctrine which has thus been stated and explained has no application to the case now before us, for not only is no trust created by the mortgage in favor of the separate creditors of Judson, but those creditors as a class are not before the court, nor from the nature of the action—seeking only the foreclosure of the mortgage—could they properly be made parties. Could we, therefore, admit, which we are far from doing, that a mortgage given by an insolvent partner to secure the payment of a partnership debt, may be avoided at the instance and for the benefit of his separate creditors, it still remains certain, that to this relief the defendants Stewart & Co., merely as judgment creditors, and claiming only upon their own behalf, cannot be entitled. This objection to the validity of the mortgage is not one *99 which they, acting separately, have any right to urge, unless upon the supposition that the execution issued upon their judgment, and the levy asserted to have been made under it gave them a lien upon the mortgaged property which may entitle them to share in the distribution of the fund arising from its sale. It is upon the truth of this supposition that the case of the appellants, viewed in its most favorable aspect, wholly depends. If in no event can they be entitled to a share of the fund in court, it is clear that they can have no right to question the propriety of the judgment that has been rendered.
We are, however, very clearly of opinion that the appellants, neither by virtue of their execution nor otherwise, acquired any lien upon the property mortgaged that can entitle them to share in the distribution of its proceeds. This property was not bound by their execution at all, and the pretended levy was illegal and void. Judson was not the owner of the property when the execution was issued, nor had he any interest upon which the process could attach or that could rightfully be made the subject of a levy and sale under it.
There is a wide difference between a mortgage of lands and a mortgage of chattels. In the first case, as the law in this state is now settled, the estate, subject to the mortgage, remains in the mortgagor, is bound by a judgment, and may be sold under an execution, against him—the mortgage is regarded merely as a security for the debt, and not as a transfer of the title. But a mortgage of personal chattels, in all cases, vests the legal title in the mortgagee, and when by the terms, or by the legal construction of the instrument, he has an immediate right to the possession, although the possession may not in fact have been changed, he is, in judgment of law, the absolute owner, and it is merely as his bailee and by his sufferance that the mortgagor retains the possession. The latter has no interest that is bound by, or can be sold under, an execution against him. When by the terms of the mortgage the mortgagor is to remain in possession for a certain time, his temporary interest, subject to the mortgage, may be levied on and sold, but his interest, in other cases, is a right of redemption only, a mere chose in action which, unless united to a right to the possession for a definite period, can never be the subject of a levy and sale under an execution. Such is tire estab *100 lished and undoubted law, as laid down by Mr. Justice Gardiner, in conformity to many former decisions, in delivering the judgment of the Court of Appeals in Mattison v. Baucus, (1 Comst. 295,) vide also Hull v. Carnley, (2 Duer, 105,) and cases there cited, and Butler v. Miller, (1 Comst. 500,) and applying this law to the facts of the case, it is at once manifest that if the mortgage to Townsend, or the mortgage to Rose is valid, the defendants Stewart & Co. have no claim to any portion of the fund to be distributed. If they acquired no lien by their execution, their situation and rights are exactly the same as those of all the other separate creditors of Judson, and which in the present suit we are not at liberty to consider.
That the mortgage to Townsend and the mortgage to Rose are both of them valid we have already decided, in overruling the objection that neither was followed by an immediate change of the possession. The mortgage to Townsend, in addition to the partnership debt of Cranston & Judson, was given to secure a debt of $1,000 then due to him from Judson personally, and to this extent was certainly valid even against the separate creditors of Judson. It contains no provision giving to Judson a temporary right of possession, nor can it be doubted that, by its legal construction, it vested in Townsend an immediate right of possession, as well as the legal title to the property mortgaged. He was, therefore, when the execution of the appellants was issued, in judgment of law, the sole and absolute owner of the property, subject only to a right of redemption in Judson, and in subsequent mortgagees. The same observations are applicable to the mortgage to Rose: $7,500 of the debt it professes to secure was due when the mortgage was executed, and that it gave to him an immediate right to the possession, has not been denied.
Placing our decision that the appellants acquired no lien upon the mortgaged property by force of their execution, and can, therefore, have no title to share in its proceeds, upon the grounds that have been státed, it is unnecessary to consider the questions that were raised upon the hearing in relation to the validity of the iudgment confessed by Judson to the appellants, and the suffir ciency of the levy made by the plaintiff. The objections to the judgment, were it necessary, we should, probably, overrule, but it would be difficult for us to say that a valid levy was, in fact, *101 made, or .if made, that it was not subsequently abandoned. It would seem from the evidence that Rose took and retained the possession of the mortgaged property, not only with the acquiescence of the sheriff, but with the knowledge and consent of the appellants.
Our conclusion is, that the judgment at Special Term, directing that the amount due on Mr. Townsend’s mortgage, together with his costs in the action, shall be immediately paid to him out of the fund in court, must be affirmed, and that he is also entitled to his costs on this appeal, to be paid to him by the appellants Stewart &Co.
We are also of opinion that the like judgment must be rendered in relation to the Baker mortgage, the consideration for which was ftdly proved upon the trial, and which was alleged to be void upon the like ground of the non-delivery of the possession.
Nor can we doubt that it is our duty to render the like judgment in favor of the plaintiff Slater. It is true that the proof upon the trial, in relation to the amount of the debt due to him from Judson, was by no means as clear and satisfactory as that in support of the prior mortgages, nor can it be said that the charge of usury was wholly unsustained; but these are questions of fact which were decided by the Judge in his favor, nor can his finding, in relation to either of them, be set aside as against the weight of evidence. All that can be said is, that the evidence was somewhat doubtful and conflicting. It is also proper to be remarked, that the charge of usury was not made at all in the original answer of the defendants Stewart & Co., and that in permitting its introduction by way of amendment, the Judge exercised a discretion which the provisions of the Code hardly seem to justify—an opinion in which he now fully concurs. Whether the defendants would be entitled to set up usury as a defence at all, is a question of law, which, as the fact has been found against them, it is unnecessary now to determine.
I pass now to the appeal of the defendant Rose. His appeal is limited to that portion of the judgment which directs a reference for the purpose of ascertaining the amount due upon his mortgage, and for taking an account of the profits received by him while in possession, and which also permits any party to the action to impeach his mortgage, and the consideration thereof, and to produce *102 testimony for that purpose before the referee. This reference, so far as it admits an account to be taken, we have no doubt was properly ordered, but we agree with the counsel for this appellant, that as the existence and amount of the debt for which the mortgage was given were very clearly proved upon the trial, and no evidence to impeach the transaction was then given or offered to be given, the issue as to the validity of his mortgage, which is raised by the pleadings, ought then to have been determined in his favor; the judgment must, therefore, be modified by striking out the clause which permits the mortgage to be impeached before the referee, and by substituting another affirming its validity.
The only objection that remains to be noticed is one which was relied on by all the appellants. It is, that the decision of the Judge was not given in writing, and filed with the clerk within twenty days after the court at which the trial took place, (Code, § 261). As we intimated to the counsel upon the argument, this is not an objection to which, upon the. hearing of an appeal, we can listen, and we trust it will never again be urged. The provision of the Code upon which it is founded, has been frequently decided in the Supreme Court and in this, to be simply directory, and, consequently, that its non-observance by a Judge furnishes no ground for a reversal of his decision. It is neither an irregularity that renders a judgment void, nor an error that justifies its reversal.
The judgment appealed from, modified as I have stated, is, therefore, affirmed.